```
 1                  UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
 2                        SOUTHERN DIVISION

 3
    UNITED STATES OF AMERICA                          PLAINTIFF
 4
    V.                         CRIMINAL ACTION NO: 1:07CR66
 5
    STEPHEN RANDALL LUXFORD                           DEFENDANT
 6

 7              TRANSCRIPT OF REVOCATION HEARING

 8            BEFORE HONORABLE LOUIS GUIROLA, JR.
                 UNITED STATES DISTRICT JUDGE
 9
                       MAY 21, 2013
10                  GULFPORT, MISSISSIPPI

11

12  COURT REPORTER:

13  KATI M. VOGT, RMR, CRR
    2012 15TH STREET, SUITE 403
14  GULFPORT, MISSISSIPPI  39501
    (228) 563-1751
15

16  APPEARANCES:

17  REPRESENTING THE GOVERNMENT:

18            ANNETTE WILLIAMS, ESQUIRE
              U.S. Attorney's Office
19            1575 20th Avenue
              Gulfport, Mississippi  39501
20

21  REPRESENTING THE DEFENDANT:

22            JOHN WEBER, ESQUIRE
              Office of the Public Defender
23            2510 14th Street, Suite 902
              Gulfport, Mississippi  39501
24

25
```

1  (May 21, 2013)

2  **THE COURT:** Madam clerk, you may call the next case.

3  **THE CLERK:** Next on the Court's docket, United States versus Stephen Randall Luxford, Number 1:07cr66, set for continuation of revocation.

6  **THE COURT:** What says the Government?

7  **MS. WILLIAMS:** The Government is ready, Your Honor.

8  **THE COURT:** Mr. Weber, have you had an opportunity to speak with Mr. Luxford this morning?

10  **MR. WEBER:** I met with him yesterday, Your Honor.

11  **THE COURT:** Do you need any additional time with him?

12  **MR. WEBER:** No, Your Honor.

13  **THE COURT:** All right. Is the defendant ready?

14  **MR. WEBER:** Yes, Your Honor.

15  **THE COURT:** Thank you. You may all be seated.

16  Let the record reflect that the last time this matter was before the Court, the Court had indicated the need for a forensic mental health evaluation of Mr. Luxford. That has now been completed, and I have been provided with a copy, which was completed by the Department of Justice at the federal medical center.

22  Ms. Williams, did the Government receive a copy of the forensic medical report?

24  **MS. WILLIAMS:** We did, Your Honor.

25  **THE COURT:** Mr. Weber, did you receive a copy of that

1 report?

2 **MR. WEBER:** Yes, Your Honor.

3 **THE COURT:** Did you have an opportunity to go over it
4 with Mr. Luxford?

5 **MR. WEBER:** Yes, Your Honor.

6 **THE COURT:** All right. It's the Court's intention to
7 place a copy of the medical report in evidence. It, of course,
8 will be admitted under seal. It will be unsealed only in the
9 event of an appeal of my decision to the Court of Appeals or
10 upon further order of this Court. Does the Government have any
11 objection?

12 **MS. WILLIAMS:** No objection.

13 **THE COURT:** Does the defendant have any objection?

14 **MR. WEBER:** No, Your Honor.

15 **THE COURT:** All right. Then without objection, we'll
16 mark and admit into evidence a copy of the forensic mental
17 health evaluation, completed by the Federal Bureau of Prisons
18 Department of Justice. And because that matter does contain
19 confidential medical information regarding this defendant, it
20 will be admitted under seal.

21 Ms. Williams, on behalf of the Government, do you
22 intend to offer any additional proof or any additional evidence
23 that touch upon the issues before the Court?

24 **MS. WILLIAMS:** No, Your Honor. I believe that the
25 evidence solicited at the original revocation hearing along

with the report from BOP are all the evidence that the Government intends to present.

**THE COURT:** Mr. Weber, I will extend the same courtesy to you because it's been some time, of course, since Mr. Luxford has been before the Court. Is there anything in addition that you wish to offer into evidence in this matter?

**MR. WEBER:** No, Your Honor. It's my understanding, going back, that at the last court proceeding, the Court did find Mr. Luxford in violation of the terms and conditions of his supervision and that he violated the standard conditions or the number of conditions alleged in the petition. So the only issue before the Court is the matter of the appropriate sentence upon revocation of Mr. Luxford, and in that vein, we would, number one, simply have some argument at the appropriate time, and then Mr. Luxford, of course, would like to address the Court in allocution.

**THE COURT:** Of course. I've received, I'm going to call them, letters in support of Mr. Luxford, and I presume that the public defender's office was the conduit from which I received those.

**MR. WEBER:** I'm not entirely sure.

**THE COURT:** I wanted to be sure that you had received a copy of these materials.

**MR. WEBER:** May I see them?

**THE COURT:** Do you want to take a look at them?

1    **MR. WEBER:** Yes, sir.

2    **MS. WILLIAMS:** And, Your Honor, the Government did
3    not receive a copy as we normally do when it comes through the
4    public defender's office.

5    **THE COURT:** I would think that they would touch not
6    on the gravamen of the offense but instead on sentencing.

7    **MR. WEBER:** Your Honor, these letters were not
8    submitted to the Court through our office. I did receive a
9    copy of a letter dated April 5, 2013, from Lee Ann Luxford, but
10   I did not forward that to the Court.

11   **THE COURT:** It was -- we got them directly from the
12   writers. I'll offer them to the clerk. Since they are
13   intended to affect my judgment on the sentencing in this
14   matter, I'm going to ask that the clerk make them a part of the
15   record, just like any sentencing.

16   All right. Mr. Weber, I'll offer to you, then, an
17   opportunity -- you said you wanted to make some argument or
18   make some comments into the record. Then I'll extend the same
19   courtesy to Ms. Williams. And we will, of course, give Mr.
20   Luxford, also, an opportunity to speak on his own behalf.

21   **MR. WEBER:** Thank you.

22   Your Honor, we've received and we are aware of the
23   application of the guidelines which call for a sentence of four
24   to ten months imprisonment. Mr. Luxford's been in federal
25   custody since June 6th of 2012, so almost 12 months, which is a

1  little outside the recommended range for these types of
2  violations.  It's our position that Mr. Luxford has served the
3  appropriate amount of period of incarceration for these
4  violations.  And so the main issue, as we see it, before the
5  Court is what are the types of conditions -- how long a period
6  of supervision should Mr. Luxford be continued on and what are
7  the appropriate conditions and requirements or order of the
8  Court that he abide by while he is on supervision.
9        Going back to the fact that Mr. Luxford's been
10 incarcerated for almost 12 months, I do note that the statutory
11 -- maximum statutory penalty is two years imprisonment.  This
12 Court ordered Mr. Luxford to participate in the Bureau of
13 Prisons' psychosexual evaluation, and he's done that, and we
14 have received the risk assessment, if you will, from the Bureau
15 of Prisons, which, in my recollection, is similar to the
16 initial recommendation made by the initial psychologist that
17 provided recommendations or risk assessment at the initial
18 sentencing.  And then in the middle, we have an evaluation done
19 by the folks up in the Knoxville area, which was the subject of
20 a great part of the initial revocation proceeding in that the
21 problems Mr. Luxford was having in participating in that
22 program, and it was the defendant's position that -- that the
23 Court should not consider those suggestions or recommendations
24 made by that group of therapists but should rely on an
25 independent third party, if you will, the Bureau of Prisons, or

1  the initial evaluation made by the psychologist or the
2  therapist hired by the Court to do that.
3       And based on those reports, it's our position that
4  the Court is not required -- those reports do not justify a
5  lifetime of supervision.  Certainly given the nature of this
6  particular offense, characteristics of the defendant, the
7  initial ten-year period of supervision would be sufficient, not
8  greater than necessary.  It would provide enough time for Mr.
9  Luxford to be monitored and to participate in any types of
10 programs as ordered by the Court.  So that's our first
11 position, is that a period of ten years, additional period of
12 ten years of supervision would be reasonable, given the facts
13 and circumstances and given the recommendations made by the
14 Bureau of Prisons.
15      The second issue is where should Mr. Luxford live.
16 And I've talked to Mr. Patrick Williams with the probation
17 office.  Mr. Luxford is subject to the jurisdiction of this
18 court here in the Southern District of Mississippi.  He was
19 provided courtesy supervision by the Eastern District of
20 Tennessee, and it's my understanding from talking to
21 Mr. Williams that the Eastern District of Tennessee, even the
22 Middle District of Tennessee, the Middle -- Central District of
23 California, they're not required to take Mr. Luxford and they
24 could reject him living in their district, which would cause
25 Mr. Luxford to live down here in the Southern District of

1  Mississippi. The problem with that scenario is his family
2  doesn't live here in the Southern District of Mississippi. His
3  sister, Lee Ann Luxford, is present in court. She lives in the
4  Middle District of Tennessee. And that the Middle District of
5  Tennessee initially rejected supervision of Mr. Luxford because
6  they said that they didn't have the resources to supervise him.
7  We've asking the Court to allow Mr. Luxford to, to
8  the extent the Court can, live in the Middle District of
9  Tennessee. It would be a rural area. Lee Ann Luxford is here.
10 She can describe her residence to the Court if the Court
11 pleases. She would have him gainfully employed, taking care of
12 her husband who is ill with some significant medical
13 conditions. If the Court requires a nine to five, if you will,
14 employment, Mr. Luxford has proven that he is certainly capable
15 of finding employment. And that there are treatment providers
16 or counselors in the Middle District of Tennessee that could
17 provide him with the counseling that he needs that the Court
18 will order.
19 Another reason that Mr. Luxford should be allowed
20 to -- or do what we can to lean on the Middle District to
21 accept Mr. Luxford is that there is a victim in this particular
22 case who, by my understanding, continues to live here in the
23 Southern District of Mississippi. And so I believe it's in the
24 community's best interests, it's in Mr. Luxford's best
25 interests, it's in the best interests of the victim for him to

1 live in the Middle District of Tennessee. To the extent the
2 Court can make that request to the probation officers in that
3 area, I think that would be in the best interests of all
4 parties.
5 Now, with that said, it's my understanding that Lee
6 Ann Luxford, the defendant's sister, is here and has shown that
7 she is committed to her brother and committed to helping him
8 succeed, so much so that she is willing to relocate here to
9 Mississippi. And that's quite an undertaking, to uproot her
10 family, her ill husband, her job with the U.S. Post Office up
11 there, but that's something that she's willing to do. And I
12 tell the Court that because, number one, I believe that Mr.
13 Luxford has served the appropriate period of incarceration, and
14 to provide the Court with a number of options to fashion a
15 period of supervision to make sure that the needs of Mr.
16 Luxford are met and the needs of the community are met, if that
17 makes any sense.
18 That's all.
19 **THE COURT:** All right. Thank you, Mr. Weber.
20 Ms. Williams, do you have any comments?
21 **MS. WILLIAMS:** Your Honor, I realize it's a difficult
22 situation for everyone involved due to the fact that the other
23 districts are given the opportunity to decline supervision,
24 which the Middle District of Tennessee did initially at the
25 time of Mr. Luxford's release from BOP, and now, no doubt in

1  part based on the fact that Mr. Luxford did not comply with the
2  terms of supervision in the past in the Eastern District of
3  Tennessee, they are no longer willing to take him back.

4  I think that the issue of the length of time that Mr.
5  Luxford needs to be under supervision is something that, that
6  while the testing, just the straight psychological testing
7  produces a score of a low risk for recidivism, everything else
8  in the BOP analysis is that Mr. Luxford has not accepted
9  responsibility, that he blames others for all of his problems,
10 to include the original offense, and that he's, you know --
11 still has a history of increased risk, impulsive acts, previous
12 treatment failure, and so he's going to be a risk regardless of
13 where he is.

14 I had just an opportunity to quickly peruse the
15 letters that were submitted to the Court, and it appeared to me
16 that those letters in support of Mr. Luxford support that he is
17 not responsible for the situation that he's in, that all of
18 these are still someone else's fault, so we can still kind of
19 see that he has a support system for taking that position and
20 that attitude, and therefore, Your Honor, I would submit that
21 some fairly significant supervision is required and needed in
22 order to protect the community, that that supervision needs to
23 be for a significant length of time since the prior supervision
24 has been pretty much wholly unsuccessful, based on Your Honor's
25 rulings in terms of the conditions that were proven at the

original hearing all being violated other than, I believe, Special Condition Seven in terms of the polygraph test. And so I would ask that the Court order the length of supervision as long as it can, to include up to life, on Mr. Luxford.

As to the issue of location, that is something that I believe is all within the purview of probation, and there's not really a lot we can do about that in terms of forcing another district to accept responsibility for our offender.

**THE COURT:** Let me hear from the probation officer, as we seem to be -- there seem to be some variables here that we may not have enough information on. What is the posture or the position of the Middle District of Tennessee?

**PROBATION OFFICER:** Your Honor, we would have to submit a pre-transfer investigation request prior to Mr. Luxford's release. The way the process works is, actually, if Mr. Luxford, if he was in the custody of the Bureau of Prisons, the case manager would actually forward that information to the district. But basically the way the process works is a request will have to be made to another district asking them to accept the case. Since Mr. Luxford was sentenced in this district, he is our responsibility, and no other district is required to accept supervision on the case.

The issues with this case are we have a sex offender who is very, very high risk, who did not succeed initially on supervision, and when that investigation is received in another

district, all of those factors will be considered. These types of cases cost a lot of money, a lot of time, and a lot of effort. And quite frankly, Judge, it's very, very difficult to get another district to accept supervision of one of these cases. At best, we can make a request. And again, the decision remains with them, but based on my experience, it's probably highly unlikely that his supervision will be accepted elsewhere.

We'll be more than happy to make that effort and to certainly attempt that, but realistically, I think the possibility is not very good.

**THE COURT:** All right. Mr. Luxford, before the Court imposes any sentence, even on a supervised release revocation, you have the right to speak on your own behalf. Is there anything you would like to say?

**THE DEFENDANT:** Yes. Your Honor, I'm -- I apologize for these violations that I've -- that's before you now. I take full responsibility for these. I've done a year's time. I'm -- I appreciate you taking into consideration the time I've done. And, you know, I'm just hoping that I could go back to my sister's house and just, you know -- I mean, that's going to be up to the probation office and stuff like that. And just look at all the information that's before you, and I would appreciate any leniency you could give me. And I will never be back before you again.

1          I appreciate it, Your Honor, for letting me speak.
Thank you.

**THE COURT:** Thank you, Mr. Luxford.

All right. I'm going to take a recess. I'd like to meet with the probation officer while I consider and make my best effort to unravel this Gordian knot. I'll take a short recess.

**(Recess taken 10:17 a.m. – 10:34 a.m.)**

**THE COURT:** Thank you. Be seated, please.

All right. Mr. Luxford, I have looked at this thing again and again and again, and there are no real good options, but I'm going to try to do the best I can. And while it may not, on its face, appear to be the best solution, it is what I believe, in my judgment, to be in your best interests both now and in the future.

All right. As previously stated in the record, the Court has already concluded that the defendant did violate the terms and conditions of his supervised release, and that supervised release was revoked. Grade B and Grade C violations did occur. I have also considered the advisory policy statements under Section 7B1.4 of the United States Sentencing Guidelines and other factors, other statutory factors, in imposing the sentence in this case.

It is hereby the sentence of the Court that the defendant is committed to the custody of the Federal Bureau of

1 Prisons for a term of 24 months imprisonment. The sentence of
2 imprisonment is imposed by the Court for the following reasons:
3 One, to promote respect for the law; number two, to deter
4 future criminal conduct; number three, to protect the
5 community, particularly this community, and the victim; and
6 number four, to control the defendant's conduct.
7 I am going to recommend insofar as sentencing is
8 concerned, particularly the remaining custody in this case, and
9 I do it in the strongest terms, I know I make many
10 recommendations to the Bureau of Prisons, but I think it is in
11 the best interests of this community, it is in the best
12 interests of justice, and certainly in the best interests of
13 Mr. Luxford if he is designated by the Bureau of Prisons to be
14 allowed to participate in the Bureau of Prisons Sex Offender
15 Management and Treatment Program. This is the specific
16 program, and it is an intense residential sex offender
17 treatment program which is offered at the FMC in Devens, and I
18 recommend that that be done in this case. I'm going to ask
19 that the probation office not only make my recommendation known
20 to the Bureau of Prisons, but to follow it up with a letter as
21 to how important I think it is for any type of a successful
22 outcome for the future of this defendant. I also want the
23 record to be entirely clear that I am not extending this
24 defendant's term of imprisonment simply for the purposes of
25 providing him with the needed sex offender management or

medical treatment, but instead, there are other reasons for the term of imprisonment, and that a collateral benefit should be that he be treated by the Bureau of Prisons, once again, at their Sex Offender Management Treatment Program in Devens.

Following the defendant's release from imprisonment, he is placed on supervised release for a term of life, subject to all mandatory and standard conditions of supervision. In addition, the following special conditions are hereby ordered: Number one, the defendant shall not possess or use a computer or device with any access to any online computer services at any location without the prior approval of the probation office. The defendant must consent to periodic unannounced examinations of his computer and/or electronic devices and/or removal of such equipment for the purpose of conducting an investigation or inspection; number two, at the discretion of the probation office and if deemed necessary and available, the defendant shall participate in a program of approved counseling and monitoring for sex offenders; number three, at the direction of the probation office, the defendant shall submit to polygraph examinations by a licensed polygraph examiner as approved by the probation office. The defendant shall bear the burden of the cost to the extent that he is deemed capable; number four, the defendant is ordered and shall register as a sex offender with law enforcement in the jurisdiction in which he resides, is employed, carries on a vocation, or is a student

within a three-day period of the commencement of supervision pursuant to the provisions of the Sex Offender Registration and Notification Act and as required by any applicable state law; number five, the defendant shall submit his person, residence, office, or vehicle to a search conducted by a United States probation officer at a reasonable time and in a reasonable manner based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. The defendant shall warn any other occupants of the home that the premises may be subject to searches pursuant to this condition. Failure to submit to a search may be grounds for revocation of supervised release; number six, the defendant shall participate in a program of mental health treatment as directed by the probation office until such time as the defendant is released from the program by the probation office. The defendant shall contribute to the cost of this treatment to the extent that he is deemed capable by the probation office; number seven, the defendant shall participate in a program of substance abuse treatment as directed by the probation office until such time as the defendant is released from the program by the probation office. Again, the defendant shall contribute to the cost of such treatment to the extent that he is deemed capable by the probation office; number eight, the defendant shall abstain from the use of alcohol; number nine, the defendant shall provide the probation officer with access to any requested

financial information; number ten, the defendant shall have no unsupervised personal, mail, telephone, or contact with children or minors under the age of 18 and shall have no contact, of course, with the victim in this case; number 11, the defendant shall not be employed in any area of employment or job which requires contact with children or minors under the age of 18 or with the victim.

All right. That is the sentence of the Court. The defendant is remanded to the custody of the United States Marshals. Once again, and I make this recommendation in its strongest terms, this defendant should be designated by the Bureau of Prisons to the FMC in Devens where he should be allowed to participate and hopefully successfully complete the Bureau of Prisons Sex Offender Management and Treatment Programs.

Mr. Luxford, this Court now puts the ball back in your court. I am hopeful that upon successful completion of this program, perhaps the Middle District of Tennessee would be more receptive to having you reviewed and be supervised in that region.

Anything else on behalf of the Government?

**MS. WILLIAMS:** No, Your Honor.

**THE COURT:** Anything else on behalf of the defendant?

**MR. WEBER:** Your Honor, Mr. Luxford objects to the sentence of the Court.

1  **THE COURT:** Objection is noted. The defendant is
2  remanded to the custody of the marshals.
3  　　　　Can you tell me what the nature of the objection is
4  so that I may correct it in the event I've made an error?
5  　　　　**MR. WEBER:** Your Honor, the defendant objects to the
6  24-month sentence, the statutory maximum sentence, in that it's
7  the defendant's position that the record doesn't justify the
8  24-month sentence based on the nature of the violations, and
9  that the lifetime term of supervised release is not justified
10 by the record.
11 　　　　**THE COURT:** Fair enough. All right. The objection
12 is noted. Thank you, Mr. Weber.
13 　　　　All right. We'll be in recess until this afternoon.
14 　　　　　　　　(HEARING CONCLUDED AT 10:45 A.M.)
15 　　　　　　　　　　　　　- - -

CERTIFICATE OF COURT REPORTER

I, Kati M. Vogt, RMR, CRR, Official Court Reporter for the United States District Court for the Southern District of Mississippi, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a correct transcript of the proceedings reported by me using the stenotype reporting method in conjunction with computer-aided transcription, and that same is a true and correct transcript to the best of my ability and understanding.

I further certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.

s/***Kati M. Vogt***
KATI M. VOGT, RMR, CRR
OFFICIAL COURT REPORTER